IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARQUITA C. M., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Case No. 23-cv-00158-SH |
| MARTIN J. O'MALLEY,[1] Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Marquita C. M. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying her claims for disability benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, 1381-1383f. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court reverses and remands the Commissioner's decision denying benefits.

**I.     Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A) (regarding disabled individuals). The impairment(s) must be "of such severity that [the claimant] is not only unable to do [her] previous work but cannot,

---

[1] Effective December 20, 2023, pursuant to Fed. R. Civ. P. 25(d), Martin J. O'Malley, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520.[2] To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).[3] "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the

---

[2] *See generally* 20 C.F.R. § 416.920 for Title XVI. (Where possible, the body of this opinion will reference the Title II regulations and provide, the first time mentioned, a parallel citation to Title XVI.)

[3] *See generally* 20 C.F.R. § 416.960 for Title XVI.

2

decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Background and Procedural History

Plaintiff applied for Title II and Title XVI disability benefits on February 11, 2021. (R. 220-29.) In her applications, Plaintiff alleged she has been unable to work since January 22, 2021, due to conditions including sinus tachycardia, back problems, neuropathy in both hands and feet, urethral diverticulum, vertigo, being off balance, depression, anxiety, and kidney stones. (R. 220, 224, 259.) Plaintiff was 53 years old at the time of the Administrative Law Judge's ("ALJ") decision. (R. 31, 220, 224.) She has a high school education and past relevant work as a nurse aide. (R. 63, 260.)

Plaintiff's claims were denied initially and upon reconsideration. (R. 124-30, 135-41.) Plaintiff then requested and received a hearing before an ALJ. (R. 38-67, 142-44.) The ALJ denied benefits and found Plaintiff not disabled. (R. 19-31.) The Appeals Council

3

denied review on December 2, 2022 (R. 5-9), rendering the Commissioner's decision final, 20 C.F.R. § 404.981.[4] Plaintiff now appeals.

### III. The ALJ's Decision

In his decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through December 31, 2026. (R. 22.) The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (*Id.*) At step two, the ALJ found Plaintiff had the following severe impairments: (1) neuropathy; (2) hypertension; (3) lumbar spinal stenosis; and (4) supraventricular tachycardia and ventral tachycardia. (R. 22-24.) The ALJ determined that Plaintiff's somatic symptom disorder, generalized anxiety disorder, and anxiety disorder due to other medical conditions were non-severe. (R. 23.) At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment. (R. 24-25.)

The ALJ then determined that Plaintiff had the RFC to perform light work with various exertional, postural, and environmental limitations, but no mental limitations. (R. 25.) The ALJ provided a recitation of the evidence that went into this finding. (R. 25-28.) At step four, the ALJ found Plaintiff unable to perform her past relevant work. (R. 28.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as marker, mail clerk, and stock and apparel checker. (R. 29-30.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 31.)

### IV. Issues

On appeal, Plaintiff asserts the ALJ erred in finding her mental impairments non-

---

[4] *See generally* 20 C.F.R. § 416.1481 for Title XVI.

4

severe at step two (ECF No. 9 at 6-7) and, more importantly, ignoring those non-severe impairments at steps four and five (*id.* at 5-8). Plaintiff also argues the ALJ failed in his evaluation of the medical opinion of Dennis A. Rawlings, Ph.D. (*Id.* at 8-13.) The Court finds no step-two error, as the ALJ determined other impairments to be severe and did not stop his analysis there. However, the Court agrees that the ALJ failed to consider the non-severe impairments in formulating the RFC and finds that substantial evidence did not support his evaluation of Dr. Rawlings' opinion.

## V. Analysis

### A. Non-Severe Impairments at Step Two

As a preliminary matter, the Commissioner is correct that any error at step two would be harmless. An argument that an ALJ should have found additional severe impairments at step two is easily disposed of when the ALJ has already made an explicit finding that the claimant suffered from other severe impairments. *Brescia v. Astrue*, 287 F. App'x 626, 629 (10th Cir. 2008) (unpublished).[5]

> Once an ALJ has found that a claimant has <u>at least one</u> severe impairment, a failure to designate another disorder as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps "consider[s] the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."

*Id.* (quoting 20 C.F.R. §§ 404.1523, 416.923) (emphasis added); *see also Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment

---

[5] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

is severe"). Here, the ALJ found multiple severe impairments at step two. (R. 22.) Thus, there was no error. The problem with the ALJ's analysis came later.

### B. Non-Severe Mental Impairments after Step Two

#### 1. In General

At steps two and three, the regulations prescribe a "special technique" to determine severity or non-severity of mental impairments. *See Wells v. Colvin*, 727 F.3d 1061, 1064 (10th Cir. 2013). This technique includes rating degrees of limitation in certain areas. *See* 20 C.F.R. § 404.1520a(b)-(d).[6] The resulting degree-of-limitation ratings are often referred to as "paragraph B" findings or criteria. *See, e.g.*, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *4 (July 2, 1996) ("[t]he psychiatric review technique . . . requires adjudicators to assess an individual's limitations . . . from a mental impairment(s) in categories identified in the 'paragraph B' . . . of the adult mental disorders listings").

However, the "paragraph B" limitations are distinctly not an RFC assessment. *Id.* An RFC analysis looks to determine "the most [the claimant] can still do despite [her] limitations," based on "all the relevant evidence in [the] case record." *See* 20 C.F.R. § 404.1545.[7] Such evidence includes the claimant's medical history; medical signs and laboratory findings; the effects of treatment; daily activities; lay evidence; recorded observations; medical source statements; and effects of symptoms. SSR 96-8p, at *5. The "mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment," *id.* at *4, and focuses on work-related mental

---

[6] *See generally* 20 C.F.R. § 416.920a for Title XVI.
[7] *See generally* 20 C.F.R. § 416.945 for Title XVI.

6

activities, including "the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting," *Wells*, 727 F.3d at 1069 (quoting SSR 96-8p, at *6).

So, once the ALJ found the mental impairments non-severe at step two, he could not ignore them, and was obligated to "consider the combined impact of the impairments throughout the disability determination process." 20 C.F.R. § 404.1523(c);[8] *see also* SSR 96-8p, at *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). The ALJ gave lip service to these requirements in step two—"The mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following [RFC] assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis."  (R. 24.) Unfortunately, this was not borne out in the rest of his decision.

### 2. The ALJ's Consideration of Non-Severe Mental Impairments in the RFC

Instead, the ALJ largely ignored any evidence relating to Plaintiff's mental impairments when developing the RFC.

For example, as part of the RFC assessment, the ALJ was to consider Plaintiff's reports of symptoms and treatment. *See* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); *see also* SSR 96-8p, at *5 (evidence to be considered in the RFC assessment includes the "effects of symptoms"). In his recounting of Plaintiff's testimony, however, he made no mention of her reported mental symptoms and medication. (R. 27.) Yet, at the hearing,

---

[8] *See generally* 20 C.F.R. § 416.923 for Title XVI.

Plaintiff testified that she takes Zoloft[9] because she feels "down and sad and depressed," and participated in telephonic counseling. (R. 52.)

The ALJ also did not mention the *Function Reports* completed by Plaintiff and her daughter, which outline relevant non-physical symptoms such as Plaintiff's need for reminders for personal care (R. 271) and to take her medications (R. 279); her difficulty handling stress and changes in routine (R. 275, 283); her feelings of depression (R. 282); and the effects on her ability to remember, complete tasks, concentrate, understand, and follow instructions (*id.*). The ALJ is not obligated to articulate how he considered evidence from non-medical sources using the same requirements as medical opinions, 20 C.F.R. § 404.1520c(d),[10] but he still has to consider it. *See Andrea D. W. v. Kijakazi*, No. 20-CV-00523-JFH-SH, 2022 WL 1192780, at *4-6 (N.D. Okla. Feb. 9, 2022) (collecting cases); *see also* SSR 96-8p, at *5 (evidence considered in the RFC assessment includes "lay evidence"). There is no indication there was any such consideration here.

The ALJ also ignored Plaintiff's mental impairments in his consideration of the medical evidence. For example, the ALJ failed to note that—during the relevant period— Plaintiff was often on medication for anxiety (*see, e.g.*, R. 480,[11] 493, 496, 635, 783) and depression (R. 707, 709). He also failed to recount the instances, five months before Plaintiff's alleged onset date, where doctors recommended an outpatient

---

[9] Zoloft, or sertraline, "is used to treat depression, obsessive-compulsive disorder (OCD), panic disorder, premenstrual dysphoric disorder (PMDD), posttraumatic stress disorder (PTSD), and social anxiety disorder (SAD)." https://www.mayoclinic.org/drugs-supplements/sertraline-oral-route/description/drg-20065940 (last visited March 21, 2024).

[10] *See generally* 20 C.F.R. § 416.920c for Title XVI.

[11] Clonazepam, or "Klonopin," is "used to treat panic disorder." https://www.mayoclinic.org/drugs-supplements/clonazepam-oral-route/description/drg-20072102 (last visited March 21, 2024).

8

Case 4:23-cv-00158-SH   Document 14 Filed in USDC ND/OK on 03/25/24   Page 9 of 13


neuropsychological evaluation due to her memory concerns (R. 405) and noted that she may benefit from psychiatry visits due to her anxiety issues (R. 431).

None of this evidence necessarily adds up to a particular RFC limitation.[12] But, it is not this Court's role to consider and weigh the evidence in the first instance. *See* 20 C.F.R. 404.1546(c)[13] ("the administrative law judge . . . is responsible for assessing [the claimant's] residual functional capacity"). The ALJ failed to carry his consideration of Plaintiff's non-severe mental impairments forward into the sequential analysis, which was an error of law requiring reversal.

### C.  Opinion Analysis.

Plaintiff also argues the ALJ improperly considered the medical opinion of Dr. Rawlings, who conducted Plaintiff's mental status examination. (ECF No. 9 at 8-13.) The Court finds that though the ALJ articulated the bases for finding the opinion unpersuasive, his decision was not supported by substantial evidence.

#### 1.  Dr. Rawlings' Opinion

On May 27, 2021, Plaintiff presented for a mental status examination with Dr. Rawlings. (R. 616.) On exam, among other things, Plaintiff complained of depression and anxiety, and reported "leaving her workstation because of panic attacks for 15 minutes 4-8 times a shift." (*Id.*) She related the panic attacks to her heart problems. (*Id.*) She reported a history of depression and anxiety that improved with treatment but noted that her anxiety had been complicated by cardiac issues. (R. 617.)

---

[12] It should be noted that the ALJ also ignored all the evidence of perfectly normal mental status exams during Plaintiff's course of treatment.

[13] *See generally* 20 C.F.R. § 416.946 for Title XVI.

During the objective portion of the exam, Plaintiff presented as relatively normal except in a few specific areas. (R. 617-19.) On Attention/Learning, Plaintiff made two errors on five calculations and was adjudged to be "very slow, loses her place and also has to be reinstructed" on certain tasks. (R. 617.) On Thought Content, her GAD-7 score was 12.[14] (R. 618.) On Mood, her PHQ-9 score was 9.[15] (*Id.*) On Intelligence, she answered multiple questions incorrectly. (*Id.*) Considering this, Dr. Rawlings then opined:

> **Based on the examination today the following conclusions regarding mental functioning at the present time are reasonable:**
>
> Marquita can understand, remember, and carry out simple instructions.
>
> Marquita can understand, remember, and carry out complex and detailed instructions.
>
> Marquita can concentrate and not reliably physically persist through a normal workday and work week.
>
> Marquita cannot maintain a normal workday and work week without interruptions from psychiatric symptoms.
>
> Marquita can respond appropriately to coworkers, supervisors, and the general public.

(R. 620 (emphasis in original).) Dr. Rawlings further noted that Plaintiff's prognosis was

---

[14] "The Generalized Anxiety Disorder Scale (GAD-7) is a brief 7-item self-reported measure that uses some of the *DSM-5* criteria for GAD to identify probable cases of GAD along with measuring anxiety symptom severity. It can also be used as a screening measure of panic, social anxiety, and PTSD. Most patients with GAD had GAD-7 scores of 10 or greater, whereas most patients without GAD had scores less than 10." https://www.apaservices.org/practice/measurement-based-care/suggested-measures (last visited Mar. 22, 2024).

[15] "The Patient Health Questionnaire-9 (PHQ-9; Kroenke, Spitzer & Williams, 1999) is the 9-item depression module .... It consists of the actual 9 criteria upon which the diagnosis of DSM-IV depressive disorders is based. ... Major depression is diagnosed if 5 or more of the 9 depressive symptom criteria have bene present at least 'more than half the days' in the past 2 weeks, and 1 of the symptoms is depressed mood or anhedonia. ..." https://psycnet.apa.org/doiLanding?doi=10.1037%2Ft06165-000 (last visited Mar. 22, 2024).

"Fair" and the likelihood of improvement in the next 12 months was "Minimal." (*Id.*) He recommended a comprehensive psychiatric evaluation with treatment as indicated, among other things. (*Id.*)

### 2. Medical opinions—Generally

A medical opinion is a statement from a medical source about what a claimant can still do despite their impairment and whether they have one or more impairment-related limitations or restrictions in their abilities to perform the physical, mental, or other demands of work activities, or in their ability to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2).[16] When considering a medical opinion, an ALJ does not defer or give any specific evidentiary weight to the opinion. *Id.* § 404.1520c(a). Instead, the ALJ evaluates the "persuasiveness" of the opinion by considering five factors. *Id.* § 404.1520c(a) & (c). These factors include (i) the supportability of the opinion; (ii) the consistency of the opinion; (iii) the medical source's relationship with the claimant; (iv) the medical source's specialization; and (v) any other factors that tend to support or contradict the opinion. *Id.* § 404.1520c(c).

Of those five factors, however, the ALJ must always explain how he considered only two—supportability and consistency. *Id.* § 404.1520c(b)(2). Supportability is internal to the medical source—"The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). Consistency is more external—"The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in

---

[16] *See generally* 20 C.F.R. § 416.913 for Title XVI.

the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2). The ALJ is only required to explain how the other factors were weighed when there are two or more differing medical opinions about the same issue that are equally well-supported and consistent with the record. *Id.* § 404.1520c(b)(2)-(3).

Here, while the ALJ appeared to analyze supportability and consistency, his analysis lacked evidentiary support.

### 3. The ALJ's Analysis of Dr. Rawlings' Opinion

In his decision, the ALJ found the opinion that Plaintiff "could not maintain a normal workday or workweek without interruptions of psychiatric symptoms" to be "unpersuasive." (R. 28.) Regarding supportability, the ALJ noted that there "was no explanation for the basis of the opinion" and that it appeared to be "largely based on the claimant's subjective reporting and presentation to Dr. Rawling's at that time," where "claimant denied receiving any outpatient mental health treatment and she denied any mental health hospitalizations." (*Id.*) Regarding consistency, the ALJ noted "the record does not document ongoing treatment for any mental impairment, which contrasts with the current claims of ongoing disabling symptoms and limitations since the alleged onset date." (*Id.*)

The ALJ's supportability decision lacked a substantial foundation in the evidence. While the ALJ said there was "no explanation for the basis of the opinion" (R. 28), Dr. Rawlings clearly stated that the opinion was "**Based on the examination today**," which was recounted over the preceding four pages (R. 620). The ALJ then incorrectly indicated that the opinion was primarily based on Plaintiff's subjective reporting, when Dr. Rawlings performed multiple psychological and other tests. (*See* R. 617-19.) Finally, while it is correct that Dr. Rawlings' interview indicated no "outpatient mental health

treatment" or "hospitalizations" (R. 619), the ALJ omitted Dr. Rawlings qualifier that Plaintiff "does say that her PCP has prescribed Klonopin for anxiety." (R. 619.) As such, a reasonable mind could not accept these statements as adequate support for the ALJ's supportability conclusion.

Similarly, the ALJ's consistency decision also lacks substantial evidentiary support. The ALJ's sole basis for discounting Dr. Rawlings' decision on this basis was the lack of documented "ongoing treatment for any mental impairment" in the record. (R. 28.) Yet, the record is replete with evidence that Plaintiff was receiving medication treatment for anxiety and depression (*see, e.g.*, R. 480, 493, 496, 635, 707, 709, 783), and she testified at the hearing to participating in telephonic counseling (R. 52).

The ALJ easily could have decided that Dr. Rawlings' examination findings were not sufficiently severe to support his opinion, or that Plaintiff's medication-only treatment was not sufficient to show that Dr. Rawlings' opinion was consistent with other evidence. But this Court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007). The ALJ's findings regarding Dr. Rawlings' opinion, as articulated, are not supported by substantial evidence.

## VI. Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **REVERSED AND REMANDED** for proceedings consistent with this Opinion and Order.

**SO ORDERED** this 25th day of March, 2024.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT